UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
ROBERT GRANGER,                                              :
                                                             :  **MEMORANDUM**
                             Plaintiff,                      :  **DECISION AND ORDER**
                                                             :
              - against -                                    :  16 Civ. 2264 (BMC)
                                                             :
NEW YORK CITY TRANSIT AUTHORITY                              :
and MANHATTAN AND BRONX                                      :
SURFACE TRANSIT OPERATING                                    :
AUTHORITY,                                                   :
                                                             :
                             Defendants.                     :
                                                             :
------------------------------------------------------------ X

**COGAN**, District Judge.

The issue in this employment discrimination action is whether plaintiff, who stipulated to a demotion to resolve a grievance hearing over his employer's attempt to terminate him, nevertheless obtained the right under the terms of his stipulation to be considered for a door-opening position upgrade. Defendant, his employer, contends that plaintiff surrendered any right to promotion by entering into the stipulation in lieu of a grievance hearing that would have led to his termination. Plaintiff contends that the employer's construction of the stipulation is a pretext for discrimination against him in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (the "ADA"), because of a perceived disability. There is, however, no evidence to support that. His employer has a firmly established policy denying upgrades to anyone in plaintiff's demoted position subject to exceptions not applicable here, and plaintiff's own admission shows that he understood when he signed the stipulation that his position did not allow for promotion. I therefore hold that plaintiff has failed to demonstrate a *prima facie* case, and grant defendants' motion for summary judgment.

# BACKGROUND

This is the second litigation between these parties. The first occurred when plaintiff brought a disability discrimination action seeking abrogation of a stipulation settling a grievance in which he agreed to a demotion because he had failed two drug tests (the "Stipulation"). Granger v. Manhattan and Bronx Surface Transit Operating Authority, No. 13-cv-3569, 2014 WL 4054256 (S.D.N.Y. Aug. 15, 2014) ("Granger I").[1] The Hon. Jesse M. Furman granted summary judgment to defendants, holding that plaintiff had failed to demonstrate that the Stipulation was the product of disability discrimination or that there were any grounds to avoid it. The undisputed facts in that action are equally undisputed in the present action and are best presented here by quoting Judge Furman's concise rendition:

> Defendant is a public authority in the State of New York. In 2003, Defendant hired Plaintiff as a Bus Maintainer Chassis, a safety-sensitive mechanic position. Public employees working in safety-sensitive jobs may be subject to random drug testing, see 49 C.F.R. § 655.1, procedures for which are extensively regulated by the Department of Transportation, see id. § 40 *et seq*. Among other things, employees are given up to three hours to provide a sufficient urine sample. See id. § 40.193(b)(2)-(4). If an employee fails to provide a sample in that time, and there is no adequate medical explanation for the failure, an employee is deemed to have refused to test – which, in turn, is treated as a positive test. See id. § 40.191(a)(5); see also id. § 40.193(e) (defining acceptable medical explanations for a failure to provide a sample).
>
> In August 2010, Plaintiff tested positive for marijuana and cocaine. Because he was a first-time offender and submitted to three months of rehabilitation, no disciplinary penalty was imposed. After returning to his job as a Bus Maintainer Chassis, Plaintiff was required to submit to – and passed – more than twenty random drug tests between November 2010 and March 2012. On March 5, 2012, however, Plaintiff was subjected to another drug test, and failed to provide a sample within the permitted three hours. The next day, a physician selected by Defendant examined Plaintiff, and concluded that Plaintiff had "[no] medical condition limiting the ability to urinate." On March 8, 2012, Plaintiff was

---

[1] In Granger I, plaintiff initially brought claims against both New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority ("MABSTOA"), as he does here, but New York City Transit Authority was dismissed prior to summary judgment.

> examined by a urologist of his own choosing, who stated that Plaintiff did not have "any preexisting urologic history or any real voiding disturbance except for the fact that [he] often repress[es] the urge to void and suppress urination when it conflicts with [Plaintiff's] day-to-day activities." Defendant's Medical Review Officer accepted those assessments, and therefore deemed Plaintiff's inability to produce an adequate sample a "refusal" to take the drug test.
>
> On or about March 21, 2012, Plaintiff was served with a "Disciplinary Action Notification" for "refusal to take a Drug/Alcohol Test" – the first step in the disciplinary process prescribed by the collective bargaining agreement ("CBA") between Defendant and Plaintiff's union, the Transport Workers of America, Local 100 (the "Union"). After conferring with his Union representative, Plaintiff chose not to accept the charges and recommended penalty of dismissal, and demanded an arbitration hearing pursuant to the provisions of the CBA. Prior to the arbitration hearing, a Union representative advised Plaintiff that Defendant had offered to settle the disciplinary action and presented him with a proposed stipulation to that effect. Plaintiff claims that he was told (by whom he does not say, but presumably the Union representative) that Defendant "had a room full of doctors" prepared to testify if he rejected the stipulation and chose to proceed with arbitration. He further alleges that the Union representative stated that if he did not accept the stipulation, he would be "permanently dismissed" from his employment and would have difficulty finding new employment.
>
> On May 17, 2012, after consulting with the Union representative, Plaintiff signed the Stipulation and Agreement settling the matter. Pursuant to the Stipulation, the charges against Plaintiff were modified from refusal to test to "Second Time Positive for a Controlled Substance," and the penalty of dismissal was "sustained and modified" to require Plaintiff to complete a rehabilitation program, after which he would "be eligible for restoration to an available, budgeted non-safety-sensitive Cleaner position." In exchange, and most relevant for present purposes, Plaintiff and the Union jointly and severally released Defendant "from any and all claims, whether at law, in equity or arising by virtue of contract which they may have or which they may have had heretofore in connection with the underlying disputes" in this case. In or about September 2012, Plaintiff completed the required rehabilitation program and – consistent with the Stipulation – was reemployed by Defendant as a Cleaner.

Id. at *1-2 (record citations omitted). Judge Furman rejected plaintiff's attack on the Stipulation because, among other reasons, "it is undisputed that Plaintiff avoided the arbitration hearing, which might well have resulted in his dismissal, and that he was able to – and did – remain employed by Defendant, albeit in a different position, following rehabilitation." Id. at *5.

3

The instant action picks up where Granger I left off. There are three principal employment positions in defendants' organizational chart that need to be considered: Cleaner, a janitorial position, which was the position to which plaintiff was demoted from Bus Maintainer Chassis pursuant to the Stipulation, and which involves no safety-related tasks; Cleaner/Helper, which, like Cleaner, is a janitorial position but which also allows for some safety-related assignments; and Helper, which involves safety-related tasks.[2]

Plaintiff returned to work as a Cleaner in September 2012 (following successful completion of a drug rehabilitation program, as the Stipulation required). In October, 2014, he applied for an upgrade from Cleaner to Helper. He filed a grievance when defendants denied his request. The grievance went to a neutral arbitrator.

During the arbitration hearing, plaintiff pointed out that despite his position as Cleaner from 2012, he nevertheless was assigned, from time to time, some safety-related tasks – working on a fuel line, working with a forklift, changing tires on vehicles, and connecting chains on vehicles. When defendants' senior management found out about this, it took immediate steps to end the assignment of safety-related tasks to plaintiff. In this action, defendants assert that to the extent plaintiff's shop steward had allowed plaintiff to sign up for safety-related tasks, and plaintiff's lower or mid-level supervisors had not prevented this, the managers had violated defendants' policy prohibiting Cleaners from undertaking such tasks.

In the arbitration hearing, relying on the Stipulation, defendants maintained that they had sought to terminate plaintiff for his second drug violation, but had settled plaintiff's grievance by

---

[2] Plaintiff contends that the positions of Cleaner and Cleaner/Helper have the same duties, but other than his own experience that he did some safety-related tasks, he has no evidence to support that. It may well be that some lower and mid-level supervisors will take it upon themselves to have Cleaners and Cleaner/Helpers undertake the same tasks, including some safety-related tasks, but defendants have made it clear that doing so violates their policy. Indeed, as shown below, none of the positions to which plaintiff aspired were open to Cleaners, although some were open to Cleaner/Helpers, thus showing that defendants did make that distinction.

4

assigning him to the Cleaner position, which permits no safety-related work.  In fact, defendants maintained that the sole purpose of the Cleaner position was to place employees with performance problems there, which had no safety-related tasks and no opportunity for advancement, and that there were no Cleaners who did not have a disciplinary or medical history.

Just prior to the arbitrator's decision, plaintiff filed another grievance claiming that since he had essentially performed the functions of a Cleaner/Helper since his return in 2012 by taking assignments for safety-related tasks, even though he was still designated a Cleaner, he was entitled to the additional pay for a Cleaner/Helper.  Defendants' upper management not only denied the grievance, but responded by instructing all supervisors that

> Under No Circumstances is anyone or HS To Upgrade Cleaner Granger M33005 From Cleaner to Helper. Cleaner Granger has been Reclassified as a Cleaner and is Banned from performing Helper Duties.  To ALL Supervisors The next Time Cleaner Granger is upgraded it will be a Violation To The Terms of his Stip and Supervisor will be Disciplined.

The arbitrator ruled in favor of defendants on May 15, 2015.  He found that defendants had acted properly pursuant to the Stipulation in keeping plaintiff in the Cleaner position, stating:

> [A]fter reviewing the record, I find it was reasonable for the [Defendants] to deny Granger the promotion he sought.  There is no doubt he engaged in substantial misconduct which led to his dismissal and his reinstatement as a Cleaner in a non-safety sensitive position. . . . [H]is prior infraction(s) were very serious and the Authority had a right to reject his request for elevation to a safety sensitive job.

He also noted, however, that "[t]his is not to say that Granger is barred from seeking any promotional position for the next seven years."

In August, 2015, an examination promotion opportunity opened for "Bus Maintainer Chassis," plaintiff's old job. The examination notice stated that to apply, one had to hold the title of "Maintainer's Helper, Cleaner/Maintainer's Helper, or Stock Worker."  Plaintiff did not hold

5

any of those titles, so he was not permitted to take the examination. In September, 2015, defendants advertised an examination promotion opportunity to "Plant & Equipment Maintainer (Plumbing)," but the examination notice stated that it was only open to employees in the following titles: "Bus Maintainer (Body), Bus Maintainer (Chassis), or Maintainer . . . ." Plaintiff again was not permitted to test. In August, 2016, defendants advertised an examination promotion opportunity for "Plant & Equipment Maintainer," and provided that to be eligible, the employee had to be employed in the title of "Bus Maintainer (Body), Bus Maintainer (Chassis), Maintainer (Plant & Equipment), . . . Cleaner/Maintainer's Helper, or Maintainer's Helper." Again, plaintiff did not hold any of those safety-sensitive jobs, and thus was not permitted to take the test. It is important to note that all of the positions conferring eligibility for any of these promotion examinations required performance of safety-related tasks.

## DISCUSSION

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." Kinneary v. City of New York, 601 F.3d 151, 155-56 (2d Cir. 2010) (citation and internal quotation marks omitted); see also Adams v. Festival Fun Parks, LLC, 560 F. App'x 47, 48-49 (2d Cir. 2014) (quoting McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013)) (outlining requirements for *prima facie* case under the ADA).

Defendants' argument is straightforward: the three promotion examinations for which plaintiff wished to apply were not open to anyone classified as a Cleaner; plaintiff was classified

as a Cleaner; and thus plaintiff was not qualified to take the examinations. Although that argument refutes plaintiff's theory as pled in the complaint, plaintiff's opposition to defendants' summary judgment motion shows that his theory of the case has evolved. He now contends that he was discriminated against because defendants classified him as a Cleaner, but tasked him as a Cleaner/Helper, and that, in fact, there is no material distinction between tasks assigned to Cleaners and Cleaner/Helpers. By not upgrading him to Cleaner/Helper, and rejecting his request to be paid that way, defendants not only deprived him of pay for the job that he was actually doing, but precluded him from taking the promotional exams that were open to those in the Cleaner/Helper position. This occurred, according to plaintiff, because defendants sought to discriminate against him by reason of his perceived medical condition as a recovering drug abuser.[3]

As plaintiff has recast his theory, his failure to qualify for the promotional exams is largely immaterial, except perhaps as one element of damages. The real issue is whether plaintiff's perceived disability as a recovering drug abuser was a substantial factor in defendants' decision to keep him in the Cleaner position, even though lower-level managers gave him some Cleaner/Helper, safety-related tasks. This can be answered by looking at defendants' practices with regard to the Cleaner position. If the policy is that the position of Cleaner is non-

---

[3] Plaintiff is ambiguous about the nature of his disability, with the result being that it is far from clear that he is even covered under the ADA. He cannot contend that he is actually disabled. To claim disability as a drug abuser, "past drug addiction, not merely past use, is required to make out a claim under the ADA." Buckley v. Consol. Edison Co. of N.Y., Inc., 127 F.3d 270, 274 (2d Cir. 1997), vacated on other grounds, 155 F.3d 150 (2d Cir. 1998). There is no evidence in the record that plaintiff had any drug problem other than two failed tests. To the extent he is claiming a "perceived" disability, he has the same problem – there is no evidence that defendants knew of any drug addiction, but only knew of the two failed tests. It thus cannot be said that defendants "perceived" him to be a drug addict.

To fall under the statute, plaintiff appears to be relying exclusively on testimony from Emanuel Insinna, an Assistant General Manager for defendants, who stated that he believed the two failed drug tests showed a "medical incapacity." I do not know how "medical incapacity" compares to the definition of disability under the ADA. There is no indication that Mr. Insinna is a lawyer or was interpreting the ADA. The most that can be said is that defendants perceived plaintiff as failing two drug tests, and that was bad enough to preclude him from holding any safety-related titles. But that perception is not covered by the ADA.

7

upgradeable to Cleaner/Helper, then plaintiff was treated just like any other Cleaner would be treated and disability discrimination could not have been a substantial factor. If other Cleaners, however, have applied for and received upgrades or promotions from that position, then this would at least allow the possibility that discrimination was a factor in denying plaintiff the promotion.

As in Granger I, we start with the Stipulation. It is clear, at least, that defendants were concerned that a recovering drug abuser could not return to a safety-sensitive position, and the Stipulation made plaintiff fully aware of this concern. The Stipulation thus states that

> [t]he penalty of Dismissal for case number 12-3584-0002 is sustained and modified as follows: a) The Grievant is deemed a second time positive for drugs and controlled substances pursuant to Appendix E-l of the collective bargaining agreement. Grievant must comply with the provisions outlined in Appendix E-l and is hereby referred to the Employee Assistance Program (EAP). Upon a return to work recommendation from EAP, Grievant will be eligible for restoration to an available, budgeted non-safety sensitive Cleaner position at the applicable rate of the non-safety sensitive position as per the collective bargaining agreement. The Grievant must also pass a Return to Work Reclassification Medical Exam.

Plaintiff, however, points out that there is nothing in this Stipulation that makes his reclassification as a Cleaner "permanent." He contrasts his Stipulation with one signed by another employee in similar circumstances two years after plaintiff's Stipulation, which stated that the other employee "shall be permanently reclassified to Cleaner." He also points out that defendants have no written policy describing Cleaner as a non-upgradeable or promotable position.

There are numerous problems with plaintiff's argument. The first is that he admitted in his deposition in Granger I that defendant MABSTOA had advised him that his position as Cleaner would be permanent:

8

> Q [MABSTOA's attorney]: . . . When you signed this agreement, did you understand that at the completion, the successful completion of the program you would be allowed to return as an employee of MABSTOA but as a cleaner?
>
> A [plaintiff]: As a cleaner, yes. I understood that.
>
> Q [MABSTOA's attorney]: Did anybody in the period when you were technically a dismissed employee but with a right to be restored, did anyone tell you that you would not be returned as a cleaner but as a bus maintainer?
>
> A [plaintiff]: I believe at one point I did ask if it was permanent and I was told yes. I am not sure if it was before or after signing this.
>
> Q [MABSTOA's attorney]: You were told that this assignment as a cleaner was permanent?
>
> A [plaintiff]: I believe so. I believe, not so sure who but I guess I was told that.

This admission was consistent with plaintiff's response to defendant's Rule 56.1 Statement in Granger I – the statement of undisputed fact was that "plaintiff understood that his demotion to Cleaner was permanent," and plaintiff responded that this was "not disputed."[4]

Second, the record is undisputed that defendants use the Cleaner position solely as a position for "problem" employees who cannot be trusted with the safety-related maintenance jobs that are required for Cleaner/Helper and other higher positions. In fact, for at least the last 30 years, there is no dispute defendants have not hired a single Cleaner – everyone who is assigned that title has received it as a result of a demotion from some other position.

Of course, that does not answer the question of whether, having become a Cleaner by demotion, any of those employees have previously been considered for a subsequent promotion. If so, then this would at least allow the possibility that plaintiff was not so considered by reason

---

[4] Defendants have submitted the Rule 56.1 Statement (with plaintiff's responses) from Granger I, which cited to plaintiff's deposition testimony in that action, but defendants did not submit the deposition testimony itself. I have taken judicial notice of plaintiff's testimony in Granger I since it is a publicly filed document. See Fed. R. Evid. 201; In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 839 (2d Cir. 1992); Martin v. O'Conner, 225 B.R. 283, 287 (N.D.N.Y. Aug. 13, 1998). In addition, in this action, plaintiff again affirmed that his responses to defendants' 56.1 Statement in Granger I are an "accurate statements of material facts."

9

of his perceived disability.  However, the record is equally undisputed on this point.  The evidence shows that the only ways an employee in the Cleaner position can be promoted are: (1) if the stipulation demoting the employee expressly allows for promotion; or (2) if an arbitrator orders the promotion.  During the relevant period of 2010-2015, approximately 300 employees were demoted – only eight were subsequently elevated, and each of those fell into one of these two categories. (There was one additional Cleaner who was given a promotion, but when defendants realized that, the promotion was annulled.)  In other words, the only employees to climb out of the Cleaner position either had preserved the express contractual right to do so, which plaintiff did not, or defendants were forced to promote the employee pursuant to an arbitration award.  I do not see how any reasonable jury could review this evidence and not conclude that plaintiff was relegated to a permanent position pursuant to the Stipulation.

Finally, defendants' policy that Cleaner is a non-promotable position, although not written, is consistent with the testimony of all of defendants' senior management, some of whom have decades of experience and testified unambiguously concerning the policy.

Plaintiff has offered no basis on which a reasonable jury could disregard this evidence.  He points to the caveat in the arbitrator's decision that "[t]his is not to say Granger is barred from seeking any promotional position for the next seven years."  However, he is taking that dictum out of context.  In the arbitration, as an alternative to relying on the Stipulation, defendants contended that pursuant to a written policy, any employee with a "serious violation" – and the arbitrator confirmed that plaintiff's two failed drug tests were "very serious" violations – cannot seek promotion for at least ten years – whether they have been demoted or not.  The arbitrator stated the dictum on which plaintiff relies to make it clear that he was not basing his decision on,

or approving or disapproving of, that policy, but was instead relying on the Stipulation. The complete quote from his decision is:

> This is not to say that Granger is barred from seeking any promotional position for the next seven years [i.e., three years after the Stipulation]. Nor do I suggest that the Authority's policy, having been unilaterally implemented, has no force and effect. Instead, I rule only that under the facts of this case the Authority properly denied Granger his application for promotion.

Thus, the policy involved in the instant case is not the written policy that was placed before the arbitrator, and, in any event, the arbitrator made it clear that he had nothing to say about that written policy.

Plaintiff cites better authority in relying on an arbitration decision from 2004 involving another employee, James McGarvey. In that decision, an arbitrator held that the absence of the word "permanent" in a demotion stipulation meant that an employee demoted to Cleaner could be eligible for promotion to Stockhandler. (Construing the facts most favorably to plaintiff, I will assume that "Stockhandler" is a safety-sensitive position, although neither side has told me that.) Plaintiff argues that this decision "collaterally estop[s]" defendants from arguing that the Cleaner position is not promotable.

Plaintiff's argument is not without merit, but I am ultimately unpersuaded. When a party attempts to assert collateral estoppel based on a prior arbitration award, the party "must make a showing so strong that no fair-minded jury could fail to find that the arbitrator necessarily [decided the issue] for the reason [the party] assert[s]." Postlewaite v. McGraw-Hill, 333 F.3d 42, 49 (2d Cir. 2003) (quoting BBS Norwalk One, Inc. v. Raccolta, Inc., 117 F.3d 674, 677 (2d Cir. 1997)). The party asserting preclusion thus "bears the burden of showing with clarity and certainty what was determined by the prior judgment, and collateral estoppel will only apply if it

11

is quite clear that this requirement has been met." M.J. Woods, Inc. v. Conopco, Inc., 271 F. Supp. 2d 576, 583 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).

No reasonable jury could resolve this issue in plaintiff's favor. The McGarvey arbitration proceeding involved a different issue than the one here, and thus the application of preclusion here would be inappropriate. See Rep. of Ecuador v. Chevron Corp., 638 F.3d 384, 400 (2d Cir. 2011) ("If the issues were not identical, there is no collateral estoppel.") (quoting N.L.R.B. v. Thalbo Corp., 171 F.3d 102, 109 (March 16, 1999)); May Ship Repair Contracting Corp v. Barge Columbia New York, 160 F. Supp. 2d 594, 598-99 (S.D.N.Y. 2001) (holding that plaintiff could not use a prior arbitration award to collaterally estop defendant because the arbitration did not "deal with the identical issue" that was raised in the litigation). The McGarvey arbitrator was not charged with determining whether defendants had a policy that Cleaner positions were ineligible for promotion. Indeed, the arbitrator's decision does not contain any reference to such a policy, and it does not appear that defendants even raised the issue. That may be because even if defendants had offered such a policy, the arbitrator was free to disregard it in determining whether to sustain the grievance and allow the promotion.

The "qualifications" of the employee as determined under his Union's collective bargaining agreement with defendants present a different question than whether he has demonstrated that he is "qualified" for purposes of his *prima facie* case under the ADA. The former is expressly subject to a final determination by an arbitrator – the CBA expressly provides that "in the event of a dispute, [the issue of qualifications] . . . shall be submitted to the Impartial Arbitrator under the grievance procedure" – and the arbitrator is free to exercise his discretion in determining what is fair and reasonable for the particular employee. See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003) ("It should

12

be remembered that arbitrators are hired by parties to reach a result that conforms to industry norms and to the arbitrator's notions of fairness. To interfere with this process would frustrate the intent of the parties, and thwart the usefulness of arbitration . . . . ").

That is why there is no inconsistency between the McGarvey arbitration decision and the one in plaintiff's case, or, stated otherwise, any inconsistency is itself fully consistent with the rules governing arbitration. The McGarvey arbitrator thought the language of McGarvey's stipulation was insufficient to preclude promotion based on the facts of McGarvey's misconduct; plaintiff's arbitrator thought that it was, even in light of similar facts. The root of "arbitration" is the Latin *arbitratus*, and the root of "arbitrary" is the closely related *arbitrarius*. The latter is defined as "subject to individual will or judgment without restriction." Dictionary.com, Arbitrary, at http://www.dictionary.com/browse/arbitrary (last visited March 20, 2017). Parties select arbitration in their agreements because of perceived advantages over litigation, and, particularly in the context of collective bargaining agreements, they recognize that similar fact patterns put before different arbitrators may be resolved differently.

Moreover, the McGarvey award is fully consistent with the evidence showing that defendants never voluntarily agree to a promotion of a Cleaner; if the Cleaner is going to get relief, he has to obtain it in an arbitration proceeding, as McGarvey did. Plaintiff tried, and failed.

Beyond the issue of whether a plaintiff has demonstrated that he is qualified for promotion as part of his *prima facie* case, it is more likely that to the extent either arbitration award has bearing on the analysis here, it is plaintiff's award that is entitled to deference on the fourth factor in the *prima facie* case, i.e., whether plaintiff has demonstrated circumstances consistent with disability discrimination. As the Second Circuit held in Collins v. New York

City Transit Auth., 305 F.3d 113, 119 (2d Cir. 2002), when an employment action is sustained by "a decision, based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination," then "[t]his fact is highly probative of the absence of discriminatory intent in the termination." That is the case even if plaintiff makes no reference to his federal employment discrimination claim in the arbitration. See Spell v. United Parcel Serv., No. 09 Civ. 4375, 2012 WL 4447385, *2 (E.D.N.Y. Sept. 25, 2012) ("[T]he law is clear that [the plaintiff's] failure to raise his discrimination claims before the arbitrator is immaterial to whether the arbitral decision should be given substantial weight.") (internal quotation marks omitted); see also Weeks v. New York State. Div. of Parole, 78 F. App'x 764, 766 (2d Cir. 2003) (holding that the plaintiff's claim that the arbitration decision should not be afforded significant weight because the arbitrator had not considered her discrimination claims was "without merit"). "As long as the arbitrator has properly evaluated the factual, nondiscriminatory reasons for the termination, the fact that the arbitration did not adjudicate plaintiff's discrimination claim is irrelevant." Spell, 2012 WL 4447385, *2.

Finally, the fact that, two years after the Stipulation, defendants used the word "permanent" in other stipulations demoting employees to Cleaner does not undermine the conclusion that plaintiff was not qualified to rise beyond Cleaner. It may well be that defendants adopted this subsequent remedial measure to resolve any ambiguity regarding the permanency of the demotion to Cleaner. But that does not change the fact that, even after discovery, plaintiff has been unable to identify a single Cleaner who was considered eligible for promotion except by express agreement in the Stipulation or an arbitral award. Nor does it change the fact that plaintiff himself admitted in Granger I that understood that his demotion was permanent. It is plaintiff, rather than defendants, who is attempting to rewrite the Stipulation. Just as he sought

14

relief from it in Granger I, on the ground that his entrance into the Stipulation was "tainted by coercion and duress," so is he now seeking to rewrite it to include the term "permanent" – a term that would have been superfluous in light of plaintiff's knowledge as to the meaning of the Stipulation.

Finally, to the extent plaintiff has alleged a claim for retaliation based on his assertion of an ADA discrimination claim in Granger I, he is deemed to have abandoned it. In his memorandum in opposition, plaintiff failed to address defendants' arguments for dismissal of the retaliation claim or present any evidence showing that there is a causal connection between his prior lawsuit and defendants' refusal to promote him. See Kovaco v. Rockbestos-Surprenant Cable Corp., 834 F.3d 128, 143 (2d Cir. 2016).

## CONCLUSION

Defendants' motion for summary judgment is granted. The Clerk is directed to enter judgment in favor of defendant, dismissing the complaint.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
March 21, 2017